OBKDWanS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                            22 Cr. 00673 (LAK)

ZIXIAO WANG,

                                     Sentencing
            Defendant.
------------------------------x

                                     New York, N.Y.
                                     November 20, 2024
                                     10:00 a.m.

Before:

                  HON. LEWIS A. KAPLAN,

                                   U.S. District Judge

                      APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
NICHOLAS ROOS
NATHAN MARTIN REHN
DANIELLE RENEE SASSOON
DANIELLE KUDLA
    Assistant United States Attorney

ILAN TUVIAH GRAFF
ALEX B. MILLER
    Attorneys for Defendant

ALSO PRESENT:
    Kristin Allain, FBI
    Luke Booth, FBI

OBKDWanS

1        (Case called)
2        THE DEPUTY CLERK:  Government, are you ready?
3        MR. ROOS:  Yes.
4        Good morning, your Honor.  Nicolas Roos, Nathan Rehn,
5   Danielle Sassoon, and Danielle Kudla for the United States.
6   We're joined at counsel table by Special Agent Kristin Allain
7   of the FBI.
8        THE COURT:  Good morning.
9        THE DEPUTY CLERK:  Defense, are you ready?
10       MR. GRAFF:  Yes.
11       Good morning, your Honor.  Ilan Graff for Mr. Wang,
12  joined by Alex Miller and Mr. Wang, who is seated to my right.
13       THE COURT:  Good morning.
14       Mr. Graff, have you and Mr. Wang had the presentence
15  report for the necessary period?
16       MR. GRAFF:  Yes, your Honor.
17       THE COURT:  The presentence report will be sealed and
18  made available to counsel in the event of an appeal.
19       Are there any unresolved objections to the PSR?
20       MR. ROOS:  No, your Honor.
21       MR. GRAFF:  No, your Honor.
22       THE COURT:  All right.  I have received, in relation
23  to the sentencing, the presentence report, a consent
24  preliminary order of forfeiture, a submission from Mr. Graff, a
25  letter from a former FTX employee named Adam Jin, and the

1   government's submission dated the 13th of November.  I think
2   that's it.
3           Is there anything else I should be aware of?
4           MR. GRAFF:  No, your Honor.
5           MR. ROOS:  No, your Honor.
6           THE COURT:  As a preliminary matter, the government
7   has requested that the complete, unredacted version of its
8   sentencing submission, a redacted version of which is on the
9   public docket, be filed under seal.
10          Any opposition to that?
11          MR. GRAFF:  No, your Honor.
12          THE COURT:  The Court is obliged to balance competing
13  considerations against the weight of the presumption of access
14  to judicial documents.  One such countervailing consideration
15  is the danger of impairing law enforcement or judicial
16  efficiency.  Here, the unredacted portion of the government's
17  sentencing submission, the defendant's sentencing submission,
18  and the remarks I plan to make later, all of which are or will
19  be on the public record, provide the public or will provide the
20  public with a very ample basis for understanding the sentencing
21  decision.
22          The redacted material would not add substantially to
23  the information otherwise available to the public.  On the
24  other hand, the redacted material has significant potential
25  value for the government.  Its disclosure, I find, likely would

impair law enforcement.  The danger of its doing so outweighs significantly any benefit to its public disclosure, and, accordingly, the government's motion to file the unredacted version of its sentencing submission under seal is granted.

Is there any other finding or point counsel believe should be raised?

MR. ROOS:  No.  Thank you, your Honor.

THE COURT:  Okay.  I will hear Mr. Graff.

MR. GRAFF:  Thank you, your Honor.

It is an honor to stand here on behalf of Gary Wang, who is joined here in the courtroom by his parents, his wife, Cheryl, his mother-in-law, and some of his colleagues from Polycam, including the company's CEO.

To borrow a refrain from the government, as the Court prepares to impose sentence on Mr. Wang, we respectfully urge your Honor to consider three things:  What Gary did not do, what he did, and what he still can do.

I'll start with what Gary did not do.  As set forth in the government's robust 5K, Gary did not knowingly create the so-called back doors that others exploited to steal customer money.  Gary did not have any involvement in using those special privileges or withdrawing customer funds.  For years he had no visibility on that conduct and did not even know how much Alameda had taken.

Gary did not lie to customers, to lenders, to

investors.  Gary did not falsify revenue, participate in campaign finance offenses, or participate in money laundering.  Gary did not profit from any of the criminal schemes.

Gary also didn't change his lifestyle.  He lived the same, exhausting coder's day-to-day from the day he joined Alameda until the day it all came crashing down.  While others were mingling with celebrities and dealing with high finance, he was seated at his computer pushing himself through late night after late night to address endless technical issues.

Gary also didn't make lavish investments.  He didn't buy luxury items or much of anything else. During his time at Alameda and FTX, his most extravagant expense was his regular charitable contribution of roughly 15 percent of his annual $200,000 salary, the same percentage he'd been giving since he graduated college, because Gary thought a couple hundred thousand dollars was more than enough for him and lived his life accordingly.

Unlike some others, Gary didn't make a big deal about his charitable giving or his quiet support for his friends and loved ones in or out of FTX.  There was nothing informative or attention seeking about it or about him.  He never held a press conference to explain what a good guy he was, or took to social media to do the same.  Gary's someone who tries to do the right thing for its own sake.

And that brings me, your Honor, to the last and most

important thing that Gary did not do.  He did not use anything that I've just said or any of the other mitigating facts reflected in the 5K or our own sentencing submission as an excuse to evade consequences or accountability for his actions here.

As the government's explained and the trial record reflects, there was plenty of room for rationalization and excuse making, for Gary to deny the facts and try to assert mere presence.  At a minimum, he could have waited, he could have tried to hide and wait it out.  But that's not who Gary is.  That's not the principled young man seated in the courtroom here whose integrity is evidenced in the presentence report's account of his life pre-Alameda and in the many letters from his friends and family your Honor has been able to review in connection with sentencing.

Gary knew, whatever his role, he had played a part in the FTX fraud.  He felt and continues to feel profound remorse for what he initially unwittingly did to enable the theft and for his failure to stop it when he finally learned what was happening.  He understood his participation required accountability, and he wanted to do what he could to help make things right.

So let's talk about what Gary did.  Gary made the near immediate decision to cooperate.  That is a gut wrenching, life defining choice for anyone, but more so for Gary, who had to

literally walk past Sam Bankman-Fried and into the next chapter of his life.  And when day after day after day after day Bahamian law enforcement had a new explanation for why Gary's passport, which was notionally ready to be returned, couldn't be made available to him, he showed up at the U.S. Embassy in Nassau to secure an emergency travel document, and took the first flight he could back to New York.  That's what Gary did to become the first FTX witness in the door and the first to become fully debriefed.  That's how he delivered essential evidence and an eye witness account to law enforcement in order to fuel and accelerate a prosecution which has been defined in significant part in the public's eye by how speedily it was able to bring justice.

As the government has noted in its 5K, the swiftness and substance of Gary's acceptance of responsibility, particularly under these circumstances, is in and of itself remarkable, but that's just what he did in his first weeks of cooperation with the government.  As the Court knows, Gary also meticulously unpacked the FTX code for prosecutors, for the FBI, for the SEC, for the CFTC, and more recently for the New York Attorney General.  He assisted law enforcement in pinpointing Sam Bankman-Fried's location in the Bahamas, so he could be safely and expeditiously arrested.

He took the witness stand and testified over three days to help secure Bankman-Fried's conviction.  Having made it

through that crucible, he made himself available to testify in two other trials in this district.

He also cooperated with the bankruptcy estate to the enormous benefit of FTX customers. As described in John Ray's letter, after one of the single worst weeks of Gary's life, the week of FTX's collapse, which included plenty of sleepless nights, Gary again worked through the night to help preserve $800 million of customer assets. He later helped the bankruptcy estate's technical experts navigate a range of issues, so they could identify money available to be returned and ensure that it was secure for FTX customers.

On his own time, Gary built a tool to help prosecutors identify and combat fraud in public markets. Mindful of the considerations that your Honor has already referenced today, I won't say more about that or its crypto market analog on which Gary is currently working, other than to echo the government's point in its 5K that these efforts further distinguish Gary's already outstanding cooperation from the vast majority of cooperating witnesses who appear before this Court for sentencing.

And amidst all of this, Gary rebuilt his life. He got married and is expecting his first child. He scoured listings for a job, and managed to find one that let's him use his remarkable talents in a world far removed from crypto, including in ways that help advance law enforcement by helping

to preserve evidence.  He did all of this while making time for five-hour bus rides back and forth to Manhattan to cooperate, and despite the crushing weight of his own remorse and shame, as well as public scrutiny.

There's obviously no dispute about the facts here, no disagreement about what Gary did and did not do.  By all accounts, Gary played a limited role, only belatedly learned of all of the offense conduct, swiftly accepted responsibility, and promptly began a course of extraordinary and ongoing cooperation.

For the reasons detailed in our sentencing submission, we respectfully submit that he compares favorably to every other defendant who appears before this Court for sentencing.

So I will conclude with what Gary can do.  If, in light of all of these facts, and the details in our submission and the government's 5K, the Court imposes a time-served sentence, Gary can powerfully illustrate the utilitarian benefits of cooperation and avoid deterring others with limited participation along the lines of Gary's, from pursuing the same course.

Such a sentence would also promote respect for the law, avoid unwarranted sentencing disparities, and advance all the other relevant sentencing objectives.  Your Honor, a non-custodial sentence would also mean Gary can continue his cooperation with the government and the bankruptcy estate to

1    make victims whole and prevent future frauds.  He can keep the
2    job he worked so hard to get and remain a productive member of
3    society.  And he can be the devoted and responsible husband and
4    father he so separately hopes to be.
5              We respectfully submit that all of that would be a
6    just result and ask that your Honor impose a sentence of time
7    served.
8              THE COURT:  Thank you.
9              Before I offer Mr. Wang a chance to speak for himself,
10   there are a couple of details that I skipped over earlier.
11   First of all, I take it the government has a motion, Mr. Roos.
12             MR. ROOS:  Yes.  I was intending to make it when I
13   speak, but I'll do it now.
14             The government moves to have the Court sentence
15   Mr. Wang in light of the factors set forth in section 5K1.1(a)
16   of the sentencing guidelines and pursuant to 18, United States
17   Code, 3553(e).  The reason is because of substantial
18   assistance, as described in our sentencing letter of November
19   13th, and as I'll further elaborate in my remarks shortly.
20             THE COURT:  Granted.
21             Mr. Wang, just a question for you before you speak.
22             Did you read the entire presentence report?
23             THE DEFENDANT:  Yes, your Honor.
24             THE COURT:  Did you include the portion near the end
25   that recommends a period of supervised release on certain

1  conditions, so that you understand what the recommended
2  conditions would be?
3       THE DEFENDANT:  Yes, your Honor.
4       THE COURT:  All right.  Thank you.
5       Now, you have the right to speak before your sentence.
6       Is there anything you'd like to say?
7       THE DEFENDANT:  Yes, your Honor.
8       THE COURT:  Please.  If you'd go to the microphone.
9       THE DEFENDANT:  Thank you, Judge Kaplan.
10      I'm deeply sorry to all the people who I've hurt by my
11 actions, to all the customers and investors in FTX who depended
12 on FTX and trusted us with their money.  There was so many
13 things I could have done differently that might have prevented
14 them from losing all their money, but instead I took the easy
15 path, the cowardly path, instead of doing the right thing.
16      I profoundly regret my choices.  Nothing I do will
17 ever be able to make up for those choices, but I plan to spend
18 the rest of my life doing everything I can to try to make
19 amends.  I will continue working with the FTX bankruptcy estate
20 to make customers whole, to make customers get paid back as
21 much as possible, and I will continue working with the
22 government in whatever way I can.
23      I want to thank my employer for giving me a chance to
24 be a productive member of society, and I want to thank my
25 family and my friends for all the encouragement and all the

1    love that they've given me these past two years.  I will strive

2    to -- I will strive to live a life worthy of their support.

3              Thank you, your Honor.

4              THE COURT:  Thank you.

5              Mr. Roos?

6              MR. ROOS:  Thank you, your Honor.

7              You know, your Honor, I was struck as I was filing our

8    sentencing submission on November 13 that it was exactly two

9    years since Gary Wang expressed an interest in cooperating, and

10   I find such a short time period to be truly remarkable.  To

11   have a full criminal case go to trial and to have all of the

12   witnesses -- all of the defendants be sentenced, with Mr. Wang

13   being the last one, in that time period.  And in some ways

14   Mr. Wang's cooperation really is a bookend on each side to the

15   overall case.  He was the first person to come in and the last

16   person to be sentenced.

17             I want to talk about his cooperation, first, in terms

18   of the timing.  The 5K letter and of course the defense's

19   sentencing submission outline just how quickly this happened

20   and how it was really, truly remarkable that he was the first

21   FTX employee to come in the door.  What I want to underscore is

22   how that timing really helped make the case.

23             Now, as your Honor knows, there were two aspects to

24   the way in which money was misappropriated.  One was by taking

25   money out of bank accounts that Alameda had access to, and the

1  other was by taking it off the exchange.  There are certain
2  code provisions that permitted such special advantages.  The
3  code, at least I'll say speaking for myself, is like San
4  script.  It is impossible, I would say, for someone without
5  expertise to decipher and, I would say, even someone with
6  expertise.  We had folks looking at this thing, and it was
7  really difficult to parse.
8         And what was incredible about Mr. Wang's cooperation
9  was he came in and deciphered basically half the case for us on
10 the very first day of his cooperation, working through the
11 code, calling out the very small provisions that permitted the
12 special access, walking us through how those came about, how
13 they allowed money to be misappropriated, and his conversations
14 with Sam Bankman-Fried and Nishad Singh along the way.
15        And so I think it's not just that he came in early,
16 giving us a cooperating witness early on, which of course can
17 prompt other people to cooperate and prompt other charges, but
18 the fact that he was able to decipher an otherwise extremely
19 complex case that would take tons of government resources and
20 months, if not years, to unravel without someone like Mr. Wang.
21 And I think in that respect Mr. Wang is entirely unique,
22 because I'm pretty positive there's not any other witness that
23 could do that type of work with respect to the case and do it
24 so early.
25        The second point I want to make about cooperation is

the substantial nature of his assistance.  He gave us detailed information from the beginning.  He, in many respects, has been the easiest cooperating witness I've ever worked with, because there was never a moment where there was minimization or inconsistency, where it felt like he had not given us the full facts.  From the getgo, he was identifying things, he was doing his homework in between sessions, he was taking lengthy bus rides to meet with us, and he did that not just for us but for the other agencies and for the FTX estate, and he continues to do that.

What I also think is sort of interesting about Mr. Wang is he has this incredible, unique skill set, which he was deploying for Google before deploying it for FTX, and is now deploying a skill, which is computer skills.  And unlike many cooperating witnesses, which of course are trying to help by providing historical information, Mr. Wang has this unique skill set where he can actually do something and deploy some of the skills he was using that helped to perpetrate the fraud to productive ends.

Our sentencing submission outlines this, but he created this really interesting and useful infrastructure for detecting cases for us in traditional securities markets, now crypto currency markets.  And I'll share as an anecdote, we have some other investigations that are not public yet, but Mr. Wang's tool, it actually -- running them now, it highlights

1  these cases before they were opened at the U.S. Attorney's
2  Office.  So it really seems to be an effective potential tool
3  for detecting fraud in the financial markets, and I think it's
4  really -- I haven't seen anything like it, for someone to come
5  up with a use of the skills they use to perpetrate a fraud and
6  then redeploy them in a way that helps law enforcement, society
7  in a proactive way.
8         Now, picking up on what defense counsel mentioned,
9  I've been thinking about the choice that Mr. Wang had when he
10 came into -- when he expressed an interest in cooperating on
11 November 13 and then came in shortly thereafter and then
12 quickly did four lengthy interviews and pled guilty.  I think
13 many people in his situation, based on the facts that he
14 probably knew the government had and didn't have, would have
15 picked a different path.
16        You know, unlike Sam Bankman-Fried, he didn't make any
17 public statements.  He was not tied to any spending.  He didn't
18 have any involvement in Almeda.  Unlike Ellison, he was not
19 involved in the Alameda transactions.  Unlike Singh and Salame,
20 he was not involved in spending toward the end.  As your Honor
21 may have observed during the trial, he's sort of a man of few
22 words and was not on many documents.  And I think, certainly,
23 given the paucity of documentary evidence and the lack of
24 involvement in certain aspects of the case, it would have been
25 easy for someone like Mr. Wang to say, at best, I was merely

1    present.  And, in fact, we got the exact opposite from him.

2           Day one, without any sort of prompting, he volunteered
3    it all.  Many of the things he pled guilty to are the result of
4    him incriminating himself in the proffer room, totally
5    voluntarily.  And the point is that he could, perhaps better
6    than any other defendant, have minimized responsibility and
7    stretched out the case, and he didn't.  He did absolutely the
8    opposite.

9           And so as I'm thinking about, you know, the message
10   that the Court could potentially send from the defendant's
11   sentence, I think he deserves special credit, and the enormity
12   of the fraud is an opportunity to signal how important
13   cooperation of this type and the timing of this cooperation
14   truly can be.  So I think Mr. Wang's cooperation has been far
15   beyond substantial assistance, and, as the lowest profiled
16   defendant, there's an opportunity to signal just how meaningful
17   this type of cooperation can be to the government.

18           Thank you.

19           THE COURT:  Thank you.

20           Well, I've never seen anything quite like what
21   happened here.

22           Mr. Wang, please rise for the imposition of sentence.

23           I don't think I really need to say much about the
24   extent of your cooperation.  The government and Mr. Graff have
25   said it all.  You are entitled to a world of credit for facing

up to your responsibility and beginning immediately to try to make amends for what had happened.

I also recognize that you came to the relatively limited awareness of culpable knowledge that makes you guilty of the crimes to which you pleaded guilty very late in the day, and the period of your culpability was, in comparison to the period of the culpability of the other defendants in this case, extremely small, short duration.

When the bankruptcy got filed and it became clear the house of cards was tumbling, you immediately did the right thing. You did the right thing for yourself. You did the right thing for the country. I've never seen anything quite like it, and you deserve, as I said, a world of credit.

That's not to diminish in any way the gravity of the offense for which you are liable. I think I've said before that if it wasn't the biggest financial fraud in American history, it was certainly among the two or three, and it had disastrous consequences.

But life's a balance. This is a balance, and the balance is heavily in your favor at this moment.

It is the judgment of this Court that you be committed to the custody of the Attorney General of the United States or his designee for a term of imprisonment of time served on each count; that you thereafter serve a term of supervised release of three years on each count; and that you pay the mandatory

1    special assessment of $100 -- excuse me, $400.

2              It's further adjudged that you forfeit to the United
3    States the sum of $11,020,000,000, for which you will be
4    jointly and severally liable with the codefendants, as the term
5    codefendants is defined in the consent preliminary order of
6    forfeiture that I have just signed, and you will do so, all, as
7    more fully set forth in that order.

8              The term of supervised release shall be subject to the
9    mandatory, the standard, and the special conditions of
10   supervision set forth at pages 32 to 34 of the presentence
11   report, which you have told me you have read.  The reasons for
12   those conditions are either perfectly obvious or stated in the
13   presentence report, and I agree with them.

14             I decline to order restitution based on my finding
15   that determining complex issues of fact relating to the cause
16   and amount of the victims' losses would complicate and prolong
17   the sentencing process.

18             I grant the government's motion to authorize the
19   United States to compensate the victims with finally forfeited
20   assets through a remission process as restitution would be
21   impractical in this case.

22             The mandatory drug testing condition is suspended,
23   because I find a low risk of substance abuse.

24             You may be seated.

25             I advise you that to whatever extent you haven't

1  waived it, you have the right to apply for -- well, you have
2  the right to appeal.  If you wish to appeal, you must file a
3  written notice of appeal within 14 days after the date on which
4  judgment is entered, which could be as soon as today.
5          In the event you wish to appeal and you can't afford
6  to pay the fees necessary to do so, you have the right to apply
7  for permission to appeal as a poor person.  If such an
8  application were granted, you'd be permitted to appeal without
9  payment of the fees, and if you couldn't afford a lawyer, a
10 lawyer would be appointed for you at government expense.
11         As is becoming familiar in these sentencings in this
12 case, I express my appreciation to counsel on both sides for
13 very helpful and eloquent submissions.  I don't really know and
14 I'm not asking what happened between November 13 and Mr. Wang's
15 communication of a willingness to cooperate, but I suspect he
16 had extraordinarily able and wise counsel, matched in my
17 knowledge only by that which benefited the sons of Mr. Madoff.
18         Anything else, folks?
19         MR. ROOS:  No.  Thank you, your Honor.
20         THE COURT:  Mr. Graff?
21         MR. GRAFF:  No.  Thank you, your Honor.
22         THE COURT:  All right.  Thanks, folks.
23         (Adjourned)
24
25